Okay, TB Foods v. American Mariculture. Mr. Agrawal, you can come forward after we've cleared things here. We'll wait for Ms. Singleton to pack her stuff. You take your time, Ms. Singleton. Okay, Mr. Agrawal. Good morning, Chief Judge Pryor, and may it please the Court. We've got a lot that we could talk about this morning. If it's agreeable to the Court, I was going to start out by talking about the magistrate-judge issue. That's the one that most interests me, but I can only speak for myself. And, Judge Pryor, if the Court agrees with us on that threshold question, we think that it would effectively dispose of every other issue, not only in our appeal, but also in the consolidated. It does seem to me that the real issue here is not whether there was consent, but whether there was voluntary consent. You want to talk about that? Yeah, absolutely. So, you're absolutely right, Judge Pryor, that there needs to be consent, both from all the parties to the litigation, and also, I might add, from an Article III judge who's giving up Article III power. So, on the first issue of whether you have a voluntary consent, it could be asked from the parties. I mean, the parties told the district judge, yeah, we can do that. We can proceed before the magistrate judge. The real question is whether that was voluntary or not, right? So, I have a slight disagreement with that, Judge Pryor. They said that they don't have any objection to a specific proposal. And that they had been previously discussing it, right? There was something, some reference to a previous discussion, that's right. And I should say, Your Honor, that we have no quarrel with the idea that the parties did not object to the particular proposal that the district court puts on the record. And it's only one proposal, one time. It's docket entry 535 at pages 13 to 14, 13 to 14, I think. And the proposal is that the magistrate judge, quote, take my place in terms of receiving the verdict. Yeah, and if that is all that had happened, if the district judge had left, and there had just been a verdict returned and the magistrate judge received it, would you be here arguing with this? We would not be here. What makes the difference? What makes the difference is what this court has said now going back 40 years and a bunch of cases. And that is that the magistrate judge went beyond performing the ministerial task of receiving the verdict and went beyond that to answer substantive jury questions. Not just one question, but six questions over the course of three days. And then resolved a substantive disagreement between the parties about whether there's an ambiguity in the verdict. And that, of course, implicates whether my clients have to pay $4.95 million in damages, not once but twice. You know what? No, go ahead. I was just going to say, one of the problems I'm having looking at our old cases is that they all came out before roll, I guess is the way you pronounce the Supreme Court's case, which recognized that you can implicitly consent to a magistrate judge performing certain tasks. So, I mean, what do you say about that? So I think Judge Pryor is right that there was expressed consent in the sense that there was, do you have any objection? No, we don't have any objection. Was there not then implicit consent for the magistrate judge to do all that would be necessary to resolve the jury in the trial? No, there would not be for a couple of reasons. For one thing, Your Honor, I'd refer the court to the Desir case, in which you had really similar language to the language that Your Honor just referred to. And that was something like the magistrate judge will receive the verdict and also do whatever is necessary. So a broader proposal than what was floated here. Well, yeah, I mean, I guess to be clear, I'm not saying that there was expressed consent to the magistrate judge doing everything, but I'm saying there was expressed consent to the magistrate judge doing something. And then isn't there sort of implicit consent that, you know, we don't object to the magistrate judge doing whatever is necessary to fix the rest of the trial? Yeah, so the direct answer to that question, Your Honor, is the Supreme Court is crystal clear in rule that to have a valid implied consent, you've got to have two things. One, you've got to have meaningful notification of the right to refuse consent without adverse consequences. And you've got to have meaningful notification of the need for consent. And I'd like to talk just for a second about the need for consent. What that means is not just the right that every single party has in every single case, and that is to lodge a completely ineffectual objection to the district judge. We're talking about something totally different. That is an absolute constitutional and statutory right to say, to veto this transfer of even a little bit of the Article III power to an Article I judge, even for a relatively short period of time. Now, you cannot meaningfully consent to the relinquishment of that right unless you know you have that right. Does it matter that when it becomes apparent that the magistrate judge is going to have to answer questions from the jury, or someone is going to have to, that there's no objection that that function has to be performed by an Article III judge? So it doesn't matter, and the reason for that is because if you have to stand up and object, you've already lost what in Congress's judgment and the judgment of the Supreme Court is an absolutely critical safeguard of a voluntary consent, and that is a procedural opportunity to relay the decision on consent, or the lack thereof, to the clerk of the court. And thereby, the point of this statutory regime that Congress created is not only is it kind of as a matter of paper law, legally impermissible for the magistrate judge or the Article III judge to punish a party for withholding consent, it's a practical impossibility because if you follow the procedure that is mandated by both the statute, this is 636Z2, and the rule of procedure, that's Federal Civil Procedure 73B1, and the local MDFO rule, if you follow that procedure, neither the magistrate judge nor the district judge will ever find out which of, for example, the five parties in our case refused consent. So that is an absolutely indispensable procedural protection, and the Supreme Court refers to that in the Roell case. They say there was a procedural opportunity and you foregoed that opportunity. If you do that, maybe you're out of luck and you got a different case. In addition, Your Honor, in the Roell case, you had kind of an extreme circumstance because the party that was complaining about the alleged lack of consent had consented and had consented expressly after being advised that they had an absolute right to refuse consent and that they could exercise that right without any adverse substantive consequences. And they were complaining about, well, it was one, two defendants who didn't, as a matter of kind of just formal memorialization. In trying to make sense of our precedent, putting aside for a second the Supreme Court's Roell decision, we have cases going both ways on waiver and implied consent. For example, we have a criminal case from 40 years ago, United States versus Brantley, where the Article III stakes are raised even more because statutorily a magistrate judge can't preside over a felony criminal trial, even with consent. And we had a magistrate judge answering supplemental, giving a supplemental jury charge, although the district judge had said when he had to leave, if you guys can't agree and something happens, I'll be back and I'll take care of it when I return. And the magistrate judge didn't wait, issued a supplemental jury charge, and then there was an appeal by the defendant who got convicted and we said waiver. So our cases are maybe not all over the place, but they're certainly not easy to reconcile or harmonize. What do you say about cases like Brantley? So I would say a couple of things to the extent that there's any tension in the case law. One, fall back on the statute. We don't, you know, we have a statute here. We have rule of law. Congress has said that this is a statutory constraint on the jurisdiction of magistrate judges. So that's point number one. But that constraint also applied in Brantley. Brantley has both a statutory and a constitutional constraint, right? The statute doesn't allow a magistrate judge, consent or otherwise, to preside over a felony criminal trial, and the Constitution certainly doesn't. So you've got those issues present in Brantley too, I think. Yeah, you've got, you have some tensions in the case law, and I think your Honor is right to point that out. I believe, and I'm not 100% sure about this, but I think maybe the Brantley case had been subsequently limited to its facts by the subsequent precedent. But in any event, I guess my other argument in response to that would be you can fall back on the statute. You can also fall back on default principles about the proper allocation of authority among the three branches of government. And this Court's case law is saying, look, this is a matter of, quote, fundamental judicial administration. I thought you might say that there's no real tension in our case law in terms of what the consequences are in a civil case. And this is a civil case. This is a civil case. That's right. The most pertinent authority from the Supreme Court is Roell. And Roell does make, I mean, this is a really important point. Roell does say no matter what, at a minimum, you've got to have a voluntary consent, point number one, as a precondition for the magistrate judge exercising jurisdiction. And two, to have that voluntary consent, you have to have meaningful notification of the need for consent and the right to refuse consent. You don't have that here. I see my time is up. If I could make one follow up point on that, and that would be this. You know, this is in some ways, Judge Jordan, the rare case in which it's undisputed that every single procedural safeguard that Congress and the Supreme Court and the Middle District have come up with to guarantee the voluntariness of the consent, every single one, it's undisputed that those are not satisfied here. It's not in writing. There's no notice that you have a right to refuse. Yep. Okay. Anything else? No procedural opportunity to relay consent or lack of consent to the clerk of the court. So it's not anonymous. I'm sorry? It's not anonymous. You're supposed to be anonymous. Yes. No advising that you have an absolute right to refuse consent without adverse substantive consequences. And it's undisputed, in fact, you know, opposing counsel has conceded that the parties in this case did have reason to fear adverse consequences. But if I can ask one more question. But if the district judge in this case had said, I need, I think I need to go. I'm not going to be here. And if he had expressly told the parties there, so I'm going to change the facts for you. If the district judge had said, I've got to go. But of course, the jury needs to return a verdict.  And he asks every lawyer and he asks every party. Take all the time you need to consult. Do you object? Do you object? Everybody says no. Then the district judge is clairvoyant and he says, okay, there might be a jury question or two. Does anybody have any objection to the magistrate judge handling jury questions? Turns to every lawyer, turns to every party and everybody says, no, I'm good. No, I'm good. No, I'm good. There's still, there's still a jurisdictional issue on appeal? Yeah, so there is, but obviously a different case and a harder case. But there is. And the reason for that is because there's all the difference in the world between freedom to lodge as a technical matter, an objection that the district judge is free to reject and being meaningfully advised. You have an absolute constitutional right to have an Article 3 judge with all the independence that flows from life, making crucial decisions that can affect the rest of your life. The solvency of your business. Got it. Thank you. You've saved five minutes, Mr. Gargano. Thank you, Chief Judge Pryor. If it may please the court. I want to kind of address this issue. And I think that the record is replete with the fact that this was discussed well prior to the judge making the proclamation that he's not going to be able to stay. And in those discussions, although it might not be on the record, was discussed ahead of time that he had to leave. This was a hard stop. And so the jury was still out. And so common sense would tell you that if a jury is still out, that clearly if he has to go and the magistrate has to sit in his place, then the magistrate would handle everything up until the rendering of the verdict. Yeah, the problem I have is not whether there was expressed consent, but whether it was voluntary. I mean, one of the things the district judge says, yo, you know, tomorrow, I know I can have a district judge here. I don't know what happens after that. And then we get to that day and he says, frankly, I don't see how there's any other choice. Y'all been trying this case for a long time. And it looks to me like the district judge has put the parties in a very difficult position. Now, had the jury come back with a verdict and not asked any questions, I don't think we'd be talking about this this morning. But the jury comes back with questions, the magistrate judge answers, and then we're in a different problem. So that's that's that's where we are. Well, Your Honor, I think that you have to get to the heart of the matter. What were the questions asked? It wasn't about liability. It was about remitter. It was about the amount. And I want to call the court's attention to the fact that because this issue was raised for the first time on appeal, it can only be reviewed for plain error under U.S. versus Jennings. What do you say about our Fowler decision? And it appears to me that in the civil context, we have reviewed it de novo, notwithstanding the failure to object in the district court. And it seems to me the reason for that is if there's not voluntary consent, if you were really, if the district court induced the parties, put pressure on the parties to go along, it makes sense that there might not have been an objection. And again, it's so important as a constitutional matter that you can raise it for the first time on appeal. That's what our cases seem to say. Well, I think at the end of the day, what what matters is what did the magistrate judge actually do? And was it substantive to the administration of justice in the trial? Is it did it impact answering questions from the jury? I mean, how many times did the jury come back with questions and how many answers did the how many times did the magistrate judge respond to the jury? Well, the magistrate didn't respond to the jury without talking to the counsel. And it's like three or four. But I think almost all of them were about awarding damages and how to do it. And so I don't think that impacts the substantial right. In fact, if anything, if anybody would be prejudiced, not the question. The question is, is that an Article three function? I mean, it'd be no magistrate judge can just accept the verdict. But responding to those questions is a different matter, right? That's it. That has significance. Well, I think that's where we disagree. Chief Judge Pryor is that I think it depends on the context. Context matters. I mean, if the jury just asked and said, hey, how much longer do we get? Is that now all of a sudden you're going to throw out all these years of hard work on this one thing? I mean, the thing is, is that any of these errors has to matter to the rights and it has to matter and affect the fairness of the judicial proceedings. And I don't see how that is established here. You keep talking in terms of plain error kind of language. I've told you why I think it's de novo. So let's assume for a second that it's de novo. OK, then where are you? Well, where I'm at is that the fact that I believe that there's no dispute that I believe that there was expressed consent. I also believe that the parties did have an opportunity to make a choice whether or not to accept it or the alternative was a mistrial. Were they informed of it, though? Yes, they were. We had discussed when this happened. No, no. Did the district court on the record? Yes. On the record, provide as this is going down. Now, you have a right to refuse a right to insist on an article three judge. I don't see it in the record. And I think the reason why is because the parties had discussed this ahead of time and there were a lot of informal meetings. I know I know it's not on the record, but opposing counsel, even when he talked to the judge and saying no objection, we had discussed this informally. Those informal discussions matter here that they was told that what am I have to leave? I have a hard stop on this. Yeah, I mean, the parties were discussing this after the district judges said, gosh, I don't know what's going to happen after that day where I can get a substitute article three judge. Don't know what's going to happen there. And the parties have been trying to case for how long? How long have this trial been going on? More than two, about two weeks. Yeah, two weeks. They're scrambling. Oh, my gosh. All this time we've spent on this. That's the problem I'm having is doesn't sound voluntary. Here's the other. Here's the other issue. Against you is this that if you have expressed consent to the magistrate judge doing X, which is taking the verdict, there's no express consent to the magistrate judge doing anything but taking the verdict. So that creates part of the problem on your side of the ledger. One of our early cases on the criminal side applies harmless error analysis to this very sort of problem. So although it may not be plain error, some of our cases conduct harmless error analysis. The one I'm thinking of is deletory from 1979, which finds an article three problem because a magistrate judge was answering questions before the jury returned a verdict in a criminal case, and after finding an article three violation because a magistrate judge couldn't do that, even with consent, the panel undergoes a harmless error analysis and says, yeah, in this case it was harmful. But then you have to explain if that case applies and it's an analytical framework applies, you have to explain why what the magistrate judge did here was harmless. The parties didn't agree on everything, right? Well, they didn't agree on a lot of things, but the things that they did agree on was to have the magistrate proceed, and they never questioned anything he did. I get that argument, but with regard, this is only my perspective, not my colleagues. If the harmless error framework from cases like deletory have any application here, you may have an argument, for example, if on every jury question, the parties agreed on everything, and the judge just did what the parties asked him to do, and the judge exercised no discretion, made no choices, didn't engage in any sort of independent inquiry. That might be one way of slicing the harmless error pie. Well, Your Honor, I'm glad you brought that up because that's exactly what happened. Not at the very end, though. Not at the very end when there was an argument, a claim, that there was double recovery because of the $4.9 million awarded on the federal trade secrets claim and the $4.9 million awarded on the state trade secrets claim. And that argument, that objection was made before the jury was discharged, and the magistrate judge said, no, I think it's okay, and let the jury go. So, and that's one of the arguments raised on appeals. I'm not sure that everything was agreed to by everybody. Well, I mean, my reading of the record was that the magistrate asked the attorneys how to respond and wouldn't respond without a consensus. And the consensus was reached. Do we just tell the jury? You just got to figure it out? And that was agreed. So, he didn't exercise any executive function there because we told, we both agreed that you were to instruct the jury to just reaffirm the jury instructions on damages. And that is an agreement. So, I disagree, not to be cute, but I disagree that the parties didn't agree and that the magistrate did exercise some discretion. He did not. He did not do anything without the party's consent. And the record reflects that. Except for the end when there was an objection to the allegedly inconsistent verdicts, and the magistrate judge rejected that objection and discharged the jury. So, then you look back at the harmless error part. So, what, how is that impactful? They had the opportunity to. Because you had, because you had, if there is a statutory violation, you had a non-Article III officer make decisions that an Article III officer should have made. And in this, I know this is a statutory issue, not necessarily an Article III constitutional one. But in that world of Article III versus Article I judicial officers, who's exercising the authority makes a huge difference and is sometimes the only thing that matters. Your Honor, I would tend to agree with you if this was more of an issue about liability. But the issue here is talking about damages, remitter. And I don't think, I mean, so at worst, you know, you would give that, even if it wasn't in their favor, which I think it actually hurt us more than anything. Because I think that the jury might have awarded more. But I believe that the amount, I just don't see that as, I see that as being harmless error. And another reason I see is... Let me just ask you this, because maybe I don't understand what happened. But I thought, when the jury came back with a verdict, the defendant said, this is a confusing verdict because of the way they've awarded damages. Didn't the magistrate judge have the option of saying, you're right, it is. I'm going to keep the jury. I'm going to re-instruct them and make sure, clarify what the damages are. Wasn't that an option that the magistrate judge had? The magistrate judge could have done that. But I don't think that anybody suggested otherwise. So I guess that's, yeah, so I mean, how can you say that's harmless? Because that would have resolved the ambiguity that the defendant is objecting to regarding the damages, right? Well, I don't know. How would it resolve the ambiguity? When you just tell the jury, go back, this is ambiguous, go back and resolve the ambiguity. But isn't, aren't you, but see, then you're going to have something to say that either side would appeal and say, well, now you're suggesting to the jury that something, either what they did with damages was wrong or they have to do something different. I don't think a judge, regardless of whether it's the district judge, should be doing that. I think the judge, at best, can just reiterate the instructions. But you're getting also to the substantive issue in a way of saying whether or not it was a double recovery. As a matter of, you know, our position is it's not. This is all about, much to do about nothing. Can I ask you a merits question? Yes. Can you tell me what the trade secrets were? Absolutely. The trade secret was the information, the genetics. In the genetics, there are two traits that are important. One is the highly disease resistance to EMS, which is a, it's not as big of a deal anymore, but it was. And the knowledge as to each family that shrimp was in. So in other words, and I use this analogy in my brief, think of the shrimp as encrypted databases. And so what you have to have is. Encrypted by God. Huh? Encrypted by God. But what you have here, though, is you have shrimp that contain both genetic information. And this was tracked by my client through breeding records, through years of hard work. And then what you have is we entrust that to the defendants and they get our genetic. Nobody can find out that genetic information by cutting up a shrimp? No, it's irrelevant. And I'm going to tell you why. No, no, no. Yeah. You can answer, but answer the question first. Nobody else can cut up the shrimp and find out the genetic information. You can. Then why is it a protectable trade secret? It's a protectable trade secret because you have to have a sufficient number of them. You have to have diversity cousins. And so, and this is, all the experts agreed on this. In fact, the defendants have even advertised and said that it's the genetics. And so, my point to you is what we have here is we have, what you need is a data bank, which is in the shrimp themselves. Tell me this. Did your client have, actually possess genetic information about the shrimp? I thought not. That's incorrect. They absolutely did. Just because they didn't look at the sequences, you can do, see this is the key. I thought your client had not engaged in genetic testing. See, this is a matter of science that's very important that I don't want to be lost on you. Phenotypic data is basically the inverse of genotypic data. And so, you can do it one of two ways. You can do it with PCR testing, which is the genotypic data, or you can do it observable and through breeding, which is exactly what my clients did. And that's what the 50,000 or 30,000 plus breeding records, which the defendants completely ignored at trial, didn't even look at. And so, we did have genetic information. Just because I didn't have the specific sequences, I had. You could have had it, but you didn't actually possess it. I did. I just didn't have it. It's a translation thing. Think about it. I have a genetic sequence, which I can express phenotypically, which means an observable result, and I can group those together. That's both the same information. One is just through a microscope, and the other one is through observing through countless breeding efforts and detailing that in a database. You just did it the old-fashioned way, right? Yeah. We didn't have the money. We were a startup company. We didn't have millions of dollars to look under the microscope. So, instead, what we did is we took years to develop it, and the only way they could have started their own breeding program with our genetics is by having our shrimp, the genetic diversity, the data bank, and then being able to unlock the shrimp. And they were prohibited from... I took you over your time, but thank you very much for answering the question. Okay. Thank you. Thank you, Mr. Gargamel. Thank you, Mr. Gargamel. A couple points in rebuttal. First, Judge Brasher, you asked if the magistrate judge had an option when the verdict came back to do something. He did. We've cited in our brief two cases that speak to this issue. The first is U.S. Equal Employment Opportunity Commission v. Consolidated Energy Incorporated. That's the case from the Fourth Circuit, and that makes it clear that a judge in a situation like this can poll the jury to confirm the understanding about what was the subjective intent underlying the damages awarded. I mean, that's dangerous. That's so dangerous. I mean, you're going to ask jurors to tell you what they meant by a verdict? It is. I think the only choice the judge had was to send them back and re-instruct them, but to poll them and interview them about what they meant by those awards? That's crazy. So I'm not here, Judge Jordan, today to tell you which of the available options the magistrate judge should have pursued. I am here to tell you that there were options, one of which is the one that Your Honor just referred to, and that was actually going to the second case that I was going to bring up. That's the Gentile v. County of Suffolk case, which is cited both by plaintiff in their answer brief and also by us in our reply brief. It's a Second Circuit decision, I think, out of 1991. And that's where the Second Circuit, Judge Jordan, does exactly what you're suggesting and says, you can instruct the jury, just make it clear what the law is, tell them to go back and come back and just be clear about what they intend, and you don't even have to go through that polling exercise. And the Second Circuit said, Judge Brasher, to your point, that that is an entirely appropriate thing for a judge to do to clear up the verdict. So there are things that could have been done. The failure to do that means we are now in a situation where my client's got to pay $4.95 million twice, and we're having this kind of abstract debate about what the jury might have intended if they had been clearly instructed or based on certain inferences from the instructions and stuff like that. But this could have been cleared up. Am I right in assuming that when the jury comes back with a question and the party's going to say, please just refer the jury back to the instructions, that that necessarily means that the district court's bound to do that, as your opponent seemed to suggest? It seemed to me a district judge still has the discretion to do something else, notwithstanding what the parties say. Absolutely he does. The district judge is not a potted plant who just takes instructions from the parties. And I might add, to the harmless error point, it may be the case that an Article III judge with the independence that flows from life tenure has less hesitation about second-guessing instructions that have already been provided by an Article III judge than a magistrate judge might have. And that's not to say there's any kind of bad intent or anything like that. It's just to say there might be an understandable reluctance for a magistrate judge to say, you know, when the district judge gets back, your judge, your instructions were pretty good, but there was a problem there and I fixed it and I gave new instructions. Or, conversely, your verdict form was pretty good, but I changed it up a little bit and I gave the jury a new verdict form and, you know, we fixed that problem. Or, alternatively, when the jury, for example, said we have a lot of animosity in the jury room and we're not sure we can reach a verdict, a magistrate judge might understandably be to tell the district judge, you know, when he comes back, you know, I presided over the end of the trial, I declared a mistrial, you're going to have to do the whole thing over again in three weeks. So, there are absolutely practical reasons why Article III says you've got a constitutional right to a judge who's appointed in conformity with Article III. At a minimum, this case is dealing with statutory and constitutional constraints on the extent to which core Article III powers can be delegated to an Article I judge, and those constraints have to be followed. Judge Jordan, you hit the nail right on the head when you said if there is an express consent, it has to be limited to what was expressly talked about, and the only thing that was expressly talked about was the magistrate judge taking the verdict, taking the judge's place in terms of receiving the verdict. That means by negative implication, there was no express discussion about anything else. And that's true, not just in terms of the party's consent, it's also true, and I think this is important in terms of whether the district judge subjectively intended for the magistrate judge to be exercising the powers of an Article III judge, because all we know from the record is what the district court says at 535, at pages 13 to 14, and that is the language that I just read you. So we don't have anything in the record in which the district judge says, magistrate judge, I'm authorizing you to unilaterally, that is to say without consulting me, decide these jury questions. Did the magistrate judge, there were post-judgment motions, right? I'm sorry? There were post-judgment motions filed. There were many. Refresh my recollection, the magistrate judge, did the magistrate judge rule on those, or did the district judge? No, the district judge did. The district judge came back, yeah. But this issue was not one of the ones raised in the post-trial motions. This was not, that's right. Not that it needed to be, but it was not raised before the district judge post-trial. That's right, and there are reasons for that, including that my clients didn't know that they had a constitutional right to refuse consent, much less to do it without suffering adverse consequences. But they were represented by counsel, come on. Seriously? Oh yeah, no, absolutely. Do they need to go to law school again? Your clients may not have known, but the lawyers should have known. No, no, no, this is a really important. This is all like brand new federal court stuff. Post-judgment. I'm really glad, actually, that you raised this issue, because I do think this is an important point. There are some rights out there, like Miranda rights, where everybody knows about them. There are a lot of very experienced trial attorneys who do not know that under 28 U.S.C. The record isn't going to tell us that one way or another, right, Mr. Argarwal? The record is not going to tell you that. And you're absolutely right, Judge Pryor, that this court makes decisions based on the record. The record does not say that there's any kind of informal conversation that's going on out there. And insofar as you're saying that your clients didn't know, that's also not in the record. And I'm not asking you to make any decision based on representations not in the record. I'm saying, I guess what I'm saying is, you know, the record does not establish that my clients or their lawyers were advised of the rights that they had to be advised of if statutorily mandated procedures had been followed. Okay. I think we understand your case, Mr. Argarwal. We're going to be in recess until tomorrow. Thank you.